UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
KINGVISION PAY-PER-VIEW, LTD.
as Broadcast Licensee of the          :
May 14, 2005 WRIGHT/TRINIDAD
Program,                              :

              Plaintiff,      :

          -against-            :

FRANCISCO ZALAZAR, Individually  :
and d/b/a FRAN BARBER SHOP,
and                                   :
FRAN BARBER SHOP,
                     :
          Defendants.
------------------------------------x

**REPORT & RECOMMENDATION**

06 Civ. 4441 (RJS)(MHD)

TO THE HONORABLE RICHARD J. SULLIVAN, U.S.D.J.:

Plaintiff Kingvision Pay-Per-View, Ltd. ("Kingvision") seeks damages for the alleged unauthorized public exhibition of a championship boxing telecast in 2005 by defendants Francisco Zalazar, individually and doing business as Fran Barber Shop, and by Fran Barber Shop, in violation of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. Defendants failed to answer the complaint, and a default was entered against them. Plaintiff now seeks statutory damages and attorney's fees and costs.

For the reasons that follow, we recommend that judgment be entered awarding plaintiff $6,025.00 in statutory damages and $1,337.50 in attorney's fees and costs.

1

PROCEDURAL BACKGROUND

Plaintiff filed its complaint on June 13, 2006, alleging that defendants had engaged in an unauthorized exhibition of the Wright/Trinidad boxing telecast to nine people on May 14, 2005. (Aff. of Donna K. Westrich, sworn to Oct. 27, 2006 ("Westrich Aff.") ¶ 7). Defendants failed to respond to the complaint after being served with process on July 6, 2006, and the District Court granted plaintiff's motion for entry of a default on January 7, 2009. (See Order dated Jan. 7, 2009). The matter was then referred to this court to conduct an inquest on damages. Plaintiff has filed affidavits in support of the relief it seeks. Defendants, although offered the opportunity to respond, have chosen not to do so.

EVIDENTIARY RECORD

Defendants' default "is deemed to constitute a concession to all well-pleaded allegations of liability," but it is "not considered an admission of damages." Greyhound Exhibitgroup, Inc. v. E.L.U. Realty Group, 973 F.2d 155, 158 (2d Cir. 1992); see also Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). To determine the amount of damages, we rely on the factual allegations of the complaint as well as the additional affidavits filed by the

plaintiff containing pertinent factual information. <u>See</u>, <u>e.g.</u>, <u>Tamarin v. Adam Caterers, Inc.</u>, 13 F.3d 51, 54 (2d Cir. 1993); <u>Action S.A. v. Marc Rich & Co.</u>, 951 F.2d 504, 508 (2d Cir. 1991) (quoting <u>Fustok v. ContiCommodity Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989)) .

By contract, Kingvision was granted the exclusive right to distribute the Wright/Trinidad Program ("the Program"), including all undercard bouts[1] and the entire television broadcast, scheduled for May 14, 2005, via closed circuit television and encrypted satellite signal. (Westrich Aff. ¶ 3). Kingvision subsequently entered into agreements with various commercial entities in the State of New York, allowing them to publicly exhibit the Program to their patrons by paying a fee directly to Kingvision. (Compl. ¶ 16; Westrich Aff. ¶ 3). Kingvision paid significant sums of money for the exclusive distribution of the Program. (Compl. ¶ 17).

Kingvision distributed the Program by closed circuit television and encrypted satellite signal only to those who paid the requisite fees. (Compl. ¶ 15; <u>see</u> Westrich Aff. Ex. B). Establishments that entered into an agreement with Kingvision to

---

[1] "Undercard" is defined as "the list of lower-profile contests on the same bill as the main fight at an event, typically taking place earlier in the evening." Oxford English Dictionary, http://dictionary.oed.com (last visited June 2, 2009).

3

receive and exhibit the Program paid an authorization fee of $200.00. (Westrich Aff. Ex. B). Additionally, they were charged a fee of $12.50 per seat based on the fire code occupancy of the venue to allow for establishments of varying sizes. (Id.) Kingvision typically suffers a significant drop in sales when a program is exhibited by entities unauthorized to do so. (Westrich Aff. ¶ 10).

Defendants were not authorized to receive or exhibit the Program. (Compl. ¶ 18). Without having paid a fee or signed a contract, defendants unlawfully used an illegal satellite receiver or cable converter box to intercept Kingvision's Program for the purpose of receiving it and exhibiting it to patrons within the barber shop. (Id. at ¶¶ 18, 19).

Plaintiff discovered defendants' violation through a hired independent auditor, Lee Packtor, who visited Fran Barber Shop at the time of the Program's broadcast on May 14, 2005 and witnessed its exhibition to patrons. (See Westrich Aff. ¶ 7, Ex. D). He paid no cover charge and observed one television set exhibiting a portion of the Program to approximately nine people in an establishment with an estimated capacity of 25. (Id.).

4

On three other occasions, Kingvision hired independent auditors who observed unauthorized exhibitions of Kingvision programs at Fran Barber Shop. (See Aff. of Julie Cohen Lonstein, sworn to Nov. 30, 2006 ("Lonstein Aff.") ¶¶ 5, 6, 7). These violations occurred on September 29, 2001; November 27, 2004; and July 26, 2005.[2] (Id.). There is no evidence that Kingvision pursued defendants for these violations.

ANALYSIS

I. Damages Under the Communications Act

Plaintiff brings claims under both 47 U.S.C. §§ 605(a) and 553(a)(1). The Second Circuit has held that both statutes apply to the unauthorized interception of signals from a cable television system. Section 605(a) prohibits a broad range of unauthorized interception or receipt of communications (such as "wire or radio" signals), whereas section 553 concerns only the interception of cable transmissions. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 133 (2d Cir. 1996). Each of these provisions authorizes the court to grant an award to an aggrieved party. This award may be

---

[2] It bears noting that defendants' most recent violation of the Communications Act, on July 26, 2005, occurred nearly a year before defendant was served with process by plaintiff for the May 14, 2005 violation. (See Pl.'s Mem. of Law in Supp. of Damages and Costs 2).

actual damages plus the profits accruing to the defendant by virtue of his violation or, alternatively, an award of statutory damages. 47 U.S.C. §§ 553(c)(3)(A), 605(e)(3)(C)(I).

A. General Criteria for Statutory Damages

Although a defendant may be liable under both section 553 and section 605, the plaintiff may recover only once. See, e.g., Kingvision Pay-Per-View, Ltd. v. New Paradise Rest., 2000 WL 378053, at *2 (S.D.N.Y. Apr. 11, 2000); Time Warner Cable of New York City v. Barnes, 13 F. Supp. 2d 543, 548 (S.D.N.Y. 1998); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 110 (E.D.N.Y. 1997) ("[W]here a defendant is found to have violated both statutes, the court should award damages pursuant to [section] 605."); Time Warner Cable of New York City v. Olmo, 977 F. Supp. 585, 589 (E.D.N.Y. 1997) (citing Sykes, 75 F.3d at 131-33). Potential recoveries under these two provisions differ to a degree, with section 605 offering the more generous potential award.

Section 553 gives the court discretion to award between $250.00 and $10,000.00 in statutory damages for "all violations," 47 U.S.C. § 553(c)(3)(A)(ii), but with the proviso that the maximum award may be increased by up to $50,000.00 for violations

6

"committed willfully for the purpose of commercial advantage or private financial gain . . . ″ 47 U.S.C. § 553(c)(3)(B). Section 553 also authorizes the court to reduce the award of statutory damages to a minimum of $100.00 if it "finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section." 47 U.S.C. § 553(c)(3)(C).

The terms of section 605(e)(3) allow for statutory damages ranging from $1,000.00 to $10,000.00 for "each violation." 47 U.S.C. § 605(e)(3)(C)(i)(II). The maximum fee increases to $100,000.00 per violation if the violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Section 605 also gives the courts discretion to reduce the statutory award against an innocent violator, with a prescribed $250.00 minimum for such unintended violations. 47 U.S.C. § 605(e)(3)(C)(iii).

Plaintiff alleges that defendants willfully violated both sections 553 and 605, but elects to recover statutory damages only under section 605(e)(3)(D)(i)(II). (Westrich Aff. ¶ 8).

B. The Calculation of Damages

The court has broad discretion in assessing damages. See,

e.g., Taco Rapido Rest., 988 F. Supp. at 111 (citing, inter alia,
47 U.S.C. §605(e)(3)(C)(i)(II)). When determining statutory damages
under section 605, courts generally choose between two methods of
calculation -- a per-customer damage calculation or a flat-sum
award. See Kingvision Pay-Per-View, Ltd. v. Recio, 2003 WL
21383826, at *4 (S.D.N.Y. June 11, 2003).

The per-customer approach employs a formula that multiplies a
dollar amount per customer by the number of patrons present during
the unauthorized exhibition. See, e.g., New Contenders, Inc. v.
Diaz Seafood Corp., 1997 WL 538827, at *2 (S.D.N.Y. Sept. 2, 1997)
(awarding $300.00 per patron); Taco Rapido Rest., 988 F. Supp. at
111 (awarding $50.00 per patron); Kingvision Pay-Per-View, Ltd. v.
Tardes Calenas Rest., 2005 WL 4850311, at *5 (E.D.N.Y. Nov. 29,
2005) (awarding $100.00 per patron to include loss to plaintiff and
revenue to defendant); Cablevision Sys. Corp. v. 45 Midland
Enters., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (awarding $50.00 per
patron).

The flat-sum approach is typically used when the exact number
of patrons who observed the unauthorized programming is unknown.
See, e.g., Entm't by J & J, Inc. v. Ramsarran, 2002 WL 720480, at
*2 (E.D.N.Y. Mar. 11, 2002); Garden City Boxing Club, Inc. v.
Polanco, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006) (awarding

$2,000.00 in statutory damages and an additional $10,000.00 in enhanced damages for restaurant/bar advertising and exhibiting fight without a cover charge); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (awarding $5,000.00 in statutory damages and an additional $10,000.00 in enhanced damages where grocery store did not charge a cover fee).

In determining a damages award, courts consider a variety of factors. Those include the financial loss to the plaintiff, the costs that the defendant avoided, the profits realized by the defendant as a result of the event, the financial burden of an award on the defendant, and the adequacy of the deterrent effect. See Polanco, 2006 WL 305458, at *5 (considering the cost avoided, disgorgement of profits, deterrence, and the risk of putting the defendant out of business); Ramsarran, 2002 WL 720480, at *2 (considering financial loss to plaintiff and financial status of defendant); Entm't by J & J, Inc. v. Al-Waha Enters., 219 F. Supp.2d 769, 776 (S.D. Tex. 2002) (increasing award from $1,500.00, the cost defendant avoided, to $5,000.00, in light of the deterrence goal of 47 U.S.C. § 605).

In support of its application for damages, plaintiff has proffered evidence of the number of people present at the time of the Program's exhibition, as well as the revenues that it lost as

a result of the unauthorized exhibition of the Program. (See Westrich Aff. ¶ 7; see also Pl.'s Mem. of Law in Supp. of Damages and Costs 5). Mr. Packtor reported that he observed nine people in the establishment, which had an approximate capacity of 25 people, on the night of May 14, 2005. (Westrich Aff. Ex. D). Although Mr. Packtor did not specify whether this number refers only to patrons or to all persons on the premises, including staff, we infer, in the absence of opposition from the defendants, that the estimate refers to the number of patrons.

Since there is evidence of the number of people present at the time of the Program's exhibition, we will proceed with a per-person approach to calculating damages. Though there is no strict standard, the per-patron approach employs a formula that multiplies a dollar amount per patron by the number of patrons present during the unauthorized exhibition. See, e.g., J & J Sports Prods., Inc. v. Schrader Rest. Corp., 485 F. Supp.2d 422, 423 (S.D.N.Y. 2007) (awarding $50 per patron); New Contenders, 1997 WL 538827, at *2 (awarding $300 per patron, taking into account profits from sales of food and drink); 45 Midland Enters., 858 F. Supp. at 45 (awarding $50 per patron).

In determining the amount by which to multiply the number of patrons, we first note the evidence of plaintiff's lost revenues.

If the nine patrons present had paid $54.95 to view the Program legally at home on a pay-per-view channel rather than for free at Fran Barber Shop, they would have collectively paid $494.55. This approach to calculating a base amount of statutory damages has been followed by a number of courts. See J & J Sports Prods. v. Arhin, 2009 WL 1044500, at *1 (E.D.N.Y. Apr. 17, 2009) (awarding $54.95 per patron present at time of audit); Kingvision Pay-Per-View Ltd. v. Cazares, 2006 WL 2086031, at *3-4 (E.D.N.Y. July 25, 2006) (awarding $54.95 per patron present at time of audit); cf. Garden City Boxing v. Bello, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (awarding $54.95 according to the maximum capacity of the fire code occupancy). By comparison, if defendant had initially obtained a license for the Program from plaintiff, Kingvision would have received $512.50 in payment.[3] Variants of this calculation have also been used by a number of courts. See Joe Hand Promotions, Inc. v. Martinez, 2008 WL 4619855, at *5 (S.D.N.Y. Oct. 17, 2008) (awarding amount of plaintiff's lost revenue plus defendant's presumed revenue per patron present at a restaurant/bar); Al-Waha Enters., 219 F. Supp. 2d at 776 (looking to plaintiff's lost revenue as a result of defendants' violation to determine award); Entm't by J & J Inc. v. Nina's Rest. and Catering, 2002 WL 1000286,

---

[3] This calculation includes a $200.00 authorization fee and a fee of $12.50 per person based on the assumption -- not specifically proven on the record -- that the fire code maximum was 25 people. (See Westrich Aff. Ex. B).

at *3 (S.D.N.Y. May 9, 2002) (determining award based on plaintiff's lost revenue and increasing it by one and a half for future deterrence).

We choose to follow the second lost-revenue approach because it accurately reflects both the loss of revenue to plaintiff by virtue of defendants' violation and the cost avoided by defendants through their impermissible conduct. Therefore, we conclude that the figure of $512.50 accurately reflects the loss to plaintiff as a result of defendants' violation and is an appropriate starting point for determining the base amount of statutory damages.

Since the minimum statutory amount -- except for innocent violations -- is $1,000.00, we double the loss award, arriving at a base amount of $1,025.00.

Plaintiff also requests an increased award under section 605(e)(3)(C)(ii), which allows for enhanced damages if "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." "Willfulness has been defined by the Supreme Court as 'disregard for the governing statute and an indifference for its requirements.'" Cablevision Sys. New York City Corp. v. Loshkin, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting Trans World

12

Airlines, Inc. v. Thurston, 469 U.S. 111, 126-27 (1985)).

The court typically looks to a variety of factors when determining willfulness in these cases. These include both circumstances reflecting deliberate actions by the defendant to acquire a normally unavailable signal, see, e.g., Googies Luncheonette, Inc., 77 F. Supp. 2d at 490, and "i) repeated violations over an extended period of time; ii) substantial unlawful monetary gains; iii) advertising of the broadcast; or iv) charging of a cover charge or premiums for food or drinks." Kingvision Pay-Per-View, Ltd. v. Lalaleo, 429 F. Supp. 2d 506, 515 (E.D.N.Y. 2006) (citing Kingvision Pay-Per-View, Ltd. v. El Rey Del Bistec y Caridad, Inc., 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001)). Even without evidence of advertising or the charging of a fee, the circumstances in cases of piracy of pay-per-view programs generally strongly suggest that the defendant was acting willfully and for commercial advantage. See, e.g., Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

The record does not reflect that defendants sought or obtained any monetary payments for exhibiting the Program or that they

engaged in any advertising. Nonetheless, plaintiff's showing clearly demonstrates willfulness. The acquisition of an encrypted signal by defendants undoubtedly required some affirmative action on their part. See Googies Luncheonette, 77 F. Supp. 2d at 490; Al-Waha Enters., 219 F. Supp. 2d at 776 ("Based on the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance . . . courts have held [the unauthorized display of a pay-per-view event] to be willful"). Moreover, their success in acquiring the Program necessitated some degree of technical sophistication and presumably reflected a desire to obtain a benefit to which they were not entitled. (See Westrich Aff. ¶ 9).

As for the balance of the statutory test, plaintiff proffers evidence showing that defendant has violated the Communications Act in this same manner on at least three other documented occasions. (See Lonstein Aff. ¶¶ 5, 6, 7 & Exs. B, C, D). This history of repeated violations reflects the defendants' intent to profit in some way by their violation. Although there is no evidence that the barber shop realized any direct financial gain from showing the Program, defendants' pattern of showing such unauthorized programs was presumably intended, at least in part, to assist in retaining loyal customers and generating goodwill for the business. These

14

inferences are particularly reasonable in the absence of any response from the defendants in this case. Therefore, we conclude that defendants acted to obtain, at the least, an "indirect commercial advantage" through their unauthorized acquisition and exhibition of the Program. 47 U.S.C. § 605(e)(3)(C)(ii). Necessarily, then, plaintiff satisfies the statutory standard for enhanced statutory damages. See, e.g., Taco Rapido Rest., 988 F. Supp. at 111-12.

As for the amount of enhancement, plaintiff seeks the statutory maximum of $100,000.00. (Compl. ¶ 29). We are generally reluctant to award the statutory maximum because it greatly exceeds the amount necessary to compensate plaintiffs and is likely to destroy defendants' typically small businesses. See, e.g., J & J Sports Prods., Inc. v. Dehavalen, 2007 WL 294101, at *3 (S.D.N.Y. Jan. 30, 2007). In this case, we note that there is no evidence that the plaintiff previously sought relief against the defendants in connection with other violations, or even communicated with the defendants to demand that they cease those violations. It is also obvious that the establishment is not a large or up-scale venue making significant, or any, revenue from showing the Program. Against these considerations must be balanced the serious need for general and specific deterrence of such violations, from which plaintiff has continued to suffer substantial revenue loss.

15

(Westrich Aff. ¶ 10); see Al-Waha Enters., 219 F. Supp. 2d at 776.

Based on these considerations, we recommend $5,000.00 in additional damages for defendants' willfulness. See, e.g., J & J Sports Prods. v. Jusna, Inc., 553 F. Supp. 2d 226, 228-29 (E.D.N.Y. 2008) (awarding $1,500.00 in enhanced damages against a hair salon with no evidence of additional pirating); J & J Sports Prods. Inc., v. Rodriques, 2007 WL 1726462, at *7 (E.D.N.Y. Apr. 19, 2007) (imposing enhanced damages of $3,000.00 on a barber shop showing a match to eight patrons with no evidence of additional pirating); J & J Sports Prods. Inc., v. Echeverria, 2007 WL 1160423, at *4 (E.D.N.Y. Mar. 16, 2007) (imposing enhanced damages of $3,000.00 on a barber shop illegally showing a boxing match to two people with no evidence of additional piracy); Taco Rapido Rest., 988 F. Supp. at 111-12 (awarding $5,000.00 to a restaurant in enhanced damages). In our opinion, this amount is sufficient to compensate the plaintiff and also deter the defendants and others from further violations.

The complaint names both the establishment and its proprietor as defendants. Since the record reflects one violation of the statute caused by the joint actions of the defendants, they should be held jointly and severally liable for a single award of $6,025.00 in statutory damages. See, e.g., Cmty. Television Sys.,

Inc. v. Caruso, 284 F.3d 430, 436 (2d Cir. 2002).

    II. Attorney's Fees and Costs

    Plaintiff is also entitled to recover costs and reasonable attorney's fees. See 47 U.S.C. § 605(e)(3)(B)(iii). The determination of reasonable fees begins with the calculation of a "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008).

    The presumptively reasonable fee is calculated by setting an hourly rate that reflects what a paying client would be willing to pay, and multiplying that rate by the number of hours reasonably expended litigating the case. Id.; Joe Hand Promotions, Inc. v. El Norteno Rest. Corp., 2007 WL 2891016, at *5 (E.D.N.Y. Sept. 28, 2007) (citing Hensley v. Eckhart, 461 U.S. 424, 434 (1983)); Cazares, 2006 WL 2086031, at *5. In the absence of unusual circumstances and particularly difficult or novel legal questions, the court should set the reasonable hourly rate at the prevailing rate for similar legal services provided by lawyers of "reasonably comparable skill, experience, and reputation" in the relevant community. Farbotko v. Clinton County, 433 F.3d 204, 208 (2d Cir. 2005) (citing Blum v. Stenson, 465 U.S. at 886, 896 & n.11 (1984)).

17

Plaintiff's attorney reports that she expended a total of three hours handling this action, and that she charges $200.00 per hour. (See Lonstein Aff. ¶ 4). She also reports that her paralegal assistant spent a total of two hours and thirty minutes at a rate of $75.00 per hour. (Id.). The resulting fee request of $787.50 reflects the absence of unusual issues in this particular case, is comparable to awards of attorney's fees in similar cases, and is plainly reasonable. See Schrader Rest. Corp., 485 F. Supp. 2d at 424 (awarding $724.00 in attorney's fees based on $200.00 hourly rate for attorney and $75.00 hourly rate for paralegal); Nina's Rest., 2002 WL 1000286, at *4 (awarding $1,575.00 in attorney's fees in a similar case); Ramsarran, 2002 WL 720480, at *3 (awarding $850.00 in attorney's fees based on $250.00 hourly rate).

Plaintiff also seeks to recover $550.00 in costs incurred, which includes fees for service of process and filing. (Lonstein Aff. ¶ 3). We recommend that this amount be awarded.

## CONCLUSION

For the foregoing reasons, we recommend entry of a judgment against the defendants, jointly and severally, in the amount of $6,025.00 in statutory damages under section 605 of the Communications Act, $787.50 in attorney's fees, and $550.00 in

18

costs, for a total award of $7,362.50.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Richard J. Sullivan, 500 Pearl Street, New York, NY 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985); Small v. Secretary of Health & Human Services, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: **New York, NY**
       **June 11, 2009**

RESPECTFULLY SUBMITTED,

_____

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

19

Copies of the foregoing Report and Recommendation have been mailed
this date to:

Julie Cohen Lonstein, Esq.
Lonstein Law Office P.C.
1 Terrace Hill
P.O. Box 351
Ellenville, NY 12428

Mr. Francisco Zalazar
1741 Amsterdam Avenue
New York, NY 10031-4613

Fran Barber Shop
1741 Amsterdam Avenue
New York, NY 10031-4613

20